

# UNITED STATES DISTRICT COURT
*for the*
# Northern District of Illinois
# Eastern Division

Tiffani Walker

Plaintiff

1:21-cv-02341
Judge Charles P. Kocoras
Magistrate Judge Sheila M. Finnegan

-V-

Verizon Wireless

Defendant

## COMPLAINT AND REQUEST FOR INJUNCTION

I.  The Parties to This Complaint

    A. **The Plaintiff**

        Tiffani Walker
        9449 S. Kedzie Ave.
        #553
        Evergreen Park, IL 60805
        773-701-9316
        Tifftiff13@yahoo.com

    B. **The Defendant**

        Verizon Wireless
        New York Corporate Office
        1095 Avenue of the Americas
        New York, NY 10036
        212-395-1000

**RECEIVED**

APR 3 0 2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1

II. Basis for Jurisdiction

    Federal Question

A. This action is brought pursuant to 15 USC 1692, 15 USC 1681, and 15 USC 1602-1662. The court has jurisdiction over this action pursuant to 28 USC 1331. The State of Illinois abides by and adheres to these laws. Thus, establishing the jurisdiction of this honorable court.

III. Statement of Claim

A. Events took place in Illinois.

B. First occurrence October 13, 2018. Recurring events from November 2018 to April 2021 at various times in this timeframe. Proof in exhibits A through J4.

C. Facts

1. On October 13, 2018, Plaintiff obtained her consumer credit reports from freescoreonline.com.

2. On or about November 4, 2018, Plaintiff sent a dispute letter to Equifax (see exhibits M-N).

3. On or about November 19, 2018, Plaintiff sent dispute letter to Experian (see exhibits O-P).

4. The defendant, Verizon Wireless, did not respond to dispute letters and account remained on Plaintiff's consumer credit reports.

5. On or about March 28, 2019, Plaintiff sent a dispute letter to Transunion (see exhibits Q-R).

6. On or about April 1, 2019, Plaintiff sent a dispute letter to Equifax (see exhibits S-T).

7. On or about April 7, 2019, Plaintiff sent a dispute letter to Experian (see exhibits U-V).

8. Defendant, Verizon Wireless, did not respond to dispute letters and account remained on Plaintiff's consumer credit reports.

9. On or about January 30, 2020, Plaintiff sent a dispute letter to Experian (see exhibit W).

10. On or about February 3, 2020, Plaintiff sent a dispute letter to Transunion (see exhibit X).

11. On or about February 19, 2020, Plaintiff sent a dispute letter to Equifax (see exhibit Y).

12. Defendant, Verizon Wireless, did not respond to dispute letters and account remained on Plaintiff's consumer reports.

13. On or about June 8, 2020, plaintiff sent a dispute letter to Transunion (see exhibits Z-A1).

14. On July 10, 2020, plaintiff submitted a Consumer Financial Protection Bureau complaint against Transunion (see exhibits B1-D1).

15. On or about June 8, 2020, plaintiff sent a dispute letter to Experian (see exhibits E1-F1).

16. On July 10, 2020, plaintiff submitted a Consumer Financial Protection Bureau complaint against Experian (see exhibits G1-I1).

17. Defendant, Verizon Wireless, did not respond to the CFPB complaints and the account remained on plaintiff's Experian and Transunion consumer credit reports.

18. On or about July 23, 2020, plaintiff sent a debt validation letter certified mail with return receipt to defendant, Verizon Wireless (see exhibits J1-O1).

19. Defendant did not respond and never returned pages 4-5 as requested from the debt validation letter.

20. On September 16, 2020, plaintiff sent Affidavit of Truth, exhibits, and invoice certified mail with return receipt to defendant, Verizon Wireless (see exhibits A-L & P1-R1).

21. Defendant, Verizon Wireless, did not respond to affidavit. "Allegations in affidavit in support of motion must be considered as true in absence of counter-affidavit." (Group v Finletter. 108 F. Supp. 327 Federal case of Group v Finletter. 108 F. Supp. 327)

22. On September 29, 2020, plaintiff submitted a Consumer Financial Protection Bureau complaint against defendant, Verizon Wireless (see exhibit S1).

23. Defendant, Verizon Wireless account remained on plaintiff's consumer credit reports.

24. On January 21, 2021, plaintiff sent a notice of default and opportunity to cure letter (see exhibits T1-U1), resent Affidavit of Truth, exhibits, invoice (see exhibits P1-Q1 & A-L) and updated invoice (see exhibit Y1-W1) by certified mail with returned receipt.

4

25. Defendant, Verizon Wireless, did not respond to affidavit. Affidavit uncontested unrebutted unanswered [United States v. Kis, 658 F.2d 526, 536 (7th Cir. 1981); Cert. Denied, 50 U.S. L. W. 2169; S. Ct. March 22, 1982 1982].

26. On about February 6, 2021, plaintiff received letter from defendant that the debt was valid (see exhibit X1).

## FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS

27. Fact, the Fair Debt Collection Practices Act is intended to secure my right to privacy and my privacy has been breached so be it, and;

28. Fact, the Fair Debt Collection Practices Act is intended to protect consumers against abusive and deceptive debt collection practices and I have been abused and deceived so be it;

29. Fact, federal law prohibits a debt collector from using any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business. In exhibits A-H, defendant uses a symbol that indicates that they are in the debt collection business which is a direct violation of 15 USC 1692b(5).

30. Fact, a debt collector may not communicate with a consumer in connection with the collection of any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. The defendant communicated with plaintiff without consent at inconvenient times and places, which is a direct violation of 15 USC 1692c(a)(1) (see exhibits A-H).

31. Fact, federal law prohibits the use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person. The defendant used threatening language in their communication that was harming to plaintiff and her reputation which is a direct violation of 15 USC 1692d(1) (see exhibits A-L).

32. Fact, federal law prohibits the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader. The plaintiff read abusive, obscene language in communication from the defendant which is a direct violation of 15 USC 1692d(2) (see exhibits A-H).

33. Fact, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. The defendant used a false representation of the amount of the debt. The defendant sent communication to the plaintiff where debt amounts appear in the positive balance. Paying on a positive balance will increase the amount, not decrease it which is a direct violation of 15 USC 1692e(2)(A) (see exhibits A-L).

34. Fact, federal law prohibits communicating or threatening to communicate to any person credit information which is known or which should be known to be false. The defendant threatened to communicate plaintiff's personal credit information to the credit bureaus which is a direct violation of 15 USC 1692e(8) (see exhibit A & F).

35. Fact, the failure to disclose in the initial written communication with the consumer and, that the debt collector is attempting to collect a debt and

that any information obtained will be used for that purpose. The defendant failed to disclose in their communication with the plaintiff that it was an attempt to collect a debt which is a direct violation of 15 USC 1692e(11) (see exhibits A-L ).

36. Fact, it is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating. Plaintiff is the original creditor and does not participate in the collection of debts which is a violation of 15 USC 1692j(a) (see exhibits A-L).

## FAIR CREDIT REPORTING ACT VIOLATIONS

37. Fact, there is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. Plaintiff never granted the defendant, Verizon Wireless permission to furnish the consumer reporting agencies her information, infringing on her right to privacy which is a direct violation of 15 USC 161(a)(4) (see exhibits Y1-K2).

38. Fact, a consumer report does not include a report containing information solely as to the transactions or experiences between the consumer and the person making the report. Plaintiff's consumer reports contain transactions which should be excluded which is a direct violation of 15 USC 1681a(d)(2)(i) (see exhibits Y1-K2).

39. Fact, "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. Plaintiff's reputation was ruined by the information furnished on her consumer reports. The credit bureaus never interviewed plaintiff, her neighbors, friends, or associates which is a direct violation of 15 USC 1681a(e) (see exhibits Y1-K2).

40. Fact, "adverse action" means a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance. Federal law does not say denial of credit and plaintiff was denied credit, which is a direct violation of 15 USC 1681a(k)(1)(B)(iii) (see exhibits Y2-W3).

41. Fact, any consumer reporting agency may furnish a consumer report under the following circumstances and no other: In accordance with the written instructions of the consumer to whom it relates. Plaintiff never gave written instructions to the defendant, Verizon Wireless to furnish to any consumer reporting agency to furnish a consumer report. No consent is identity theft, which is a direct violation of 15 USC 1681b(a)(2) (see exhibits Y1-K2).

42. Fact, any consumer reporting agency may furnish a consumer report under the following circumstances and no other: To a person which it has reason to believe—intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation. Plaintiff's account was closed without her permission which is a direct violation of 15 USC 1681b(a)(3)(E) (see exhibits Y1-A2).

## TRUTH IN LENDING ACT VIOLATIONS

43. Fact, the Truth in Lending Act is intended to inform consumers on the use of credit, and I have been deceived concerning the information in my consumer credit transactions.

44. Fact, on July 23, 2016, plaintiff entered into a consumer credit transaction with the defendant, Verizon Wireless. Verizon Wireless does require consumers to give their social security number to acquire services. Plaintiff's social security number/card is defined as a credit card pursuant to 15 USC 1602(l); means any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

45. Fact, plaintiff extended herself credit through defendant, Verizon Wireless. Verizon Wireless benefitted and plaintiff did not. All credit devices that arise from a consumer's credit card and attempt to make them pay on them are a direct violation of 15 USC 1602(p) (see exhibits A-L).

46. Fact, whenever a consumer is involved in a consumer credit transaction a finance charge is involved and is the sum of all charges. Not only is the finance charge the sum of all charges but does not include charges of a type payable in comparable cash transactions. Defendant, Verizon Wireless has taken multiple cash payments which is a direct violation of 15 USC 1605(a) (see exhibits A-H).

47. Fact, as a federally protected consumer defendant, Verizon Wireless has violated plaintiffs' rights and is criminally liable for willfully and knowingly not disclosing any finance charge involved with the account and taking cash payments in a consumer credit transaction, which is a direct violation of 15 USC 1611(1) (see exhibits A-H).

48. Fact, defendant, Verizon Wireless has failed to follow the provisions on statements that are involved under an open-end consumer credit plan pursuant to 15 USC 1637 (see exhibits A-H) and is civilly liable pursuant to 15 USC 1640.

49. Fact, on July 23, 2016, defendant, Verizon Wireless, accepted a down payment on a consumer credit transaction for the financing of a device, which is a direct violation of 15 USC 1662.

IV. Irreparable Injury

50. Plaintiff realleges the allegations set forth in paragraphs 27 through 49.

51. Pursuant to 15 USC 1681(a)(2), an elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers. The elaborate mechanism are the plaintiff's consumer credit reports that contain negative accounts including the defendant, Verizon Wireless (see exhibits Y1-K2).

52. On February 6, 2020, Transunion issued plaintiff a credit score of 521 with a grade of "F." The summary states that the plaintiff has a low credit score, it will be hard to acquire any new credit. Lenders will require plaintiff to make a large deposit or down payment. Transunion tells plaintiff to prepare herself to pay high fees and interest rates, and do not expect to receive a high loan amount (see exhibit L2).

53. Additionally, Transunion issued plaintiff a credit score on March 2,2020, of 520 with a grade of "F" along with similar summary as paragraph 52 (see exhibit M2 ).

54. On March 11, 2021, plaintiff obtained her FICO scores from myfico.com. Plaintiff received a Transunion FICO score of 608 and an Experian FICO score of 634 (see exhibit N2).

55. Fact, the credit data that plaintiff received from Experian and Transunion indicates that plaintiff has serious delinquencies and insufficient number of accounts that are currently paid as agreed (see exhibits O2-V2).

56. On March 13, 2021, Experian issued plaintiff a credit score of 627. Experian indicates to plaintiff factors that are harming her credit: 3 accounts with late payments, 6% of accounts with late payments, 62% revolving credit utilization, and bankruptcy (see exhibits W2-X2).

57. Fact, plaintiff did not give permission to the credit reporting agencies to be scored. Plaintiff is being scored on unverifiable information. The credit reporting agencies did not call the plaintiff to verify if she extended credit to these

companies including the defendant, Verizon Wireless. The plaintiff never granted

Verizon Wireless permission to invade her privacy which is a direct violation of

15 USC 1681a(4) (see exhibits Y1-K2). These actions has ruined the plaintiff's

reputation which is a direct violation of 15 USC 1681(a)(2) (see exhibits A-L & Y1-

K2).

58. Fact, plaintiff's ruined reputation has caused her a loss in quality of life. She has

experienced increased out-of-pocket expenses, reduced credit capacity, and loss

of credit expectancy due to the actions of the negative information the

defendant, Verizon Wireless furnished to the credit reporting agencies.

59. Fact, creditors will require plaintiff to pay higher interest rates and higher down

payments (see exhibits Y2-W3).

60. On December 15,2020, plaintiff visited a car dealership to shop for a new car.

The car salesman asked the plaintiff if she had a co-signer and for a down

payment, resulting in plaintiff getting declined (see exhibits R3-W3).

61. Fact, plaintiff experienced loss of credit capacity when defendant, Verizon

Wireless closed her account (see exhibits Y1-A2).

62. Fact, the defendant, Verizon Wireless continues to harm the plaintiff's

reputation by causing her a loss of credit expectancy. The plaintiff has been

declined for credit cards and she does not apply anymore due to previous

declines (see exhibits Y2-W3).

63. Fact, a few credit decline reasons the plaintiff received due to the defendant,

Verizon Wireless negative information furnished to the consumer credit

reporting agencies include: serious delinquency, time since delinquency is too recent or unknown, and amount past due on accounts (see exhibits Y2-W3).

64. Fact, plaintiff has suffered embarrassment, frustration, anger, and humiliation as a result of the defendants' violations of the FDCPA, FCRA, and TILA (see exhibits A-L & Y1-K2).

65. "Other courts have even noted that, along with pain and suffering, harm to reputation, medical expenses and lost earnings, 'a ruined credit rating' is one of the "traditional harms associated with personal injury." (*United States v. Burke*, (1992) 504 US 229.)

66. Fact, after the plaintiff reviewed documents from the defendant, Verizon Wireless concerning the consumer credit transaction, she discovered that the terms of this transaction were inaccurate and unfair.

67. Fact, the plaintiff has been suffering from restless sleep since her earliest recollection of May 2020. The thought of the embarrassment, humiliation, and harm to her reputation is threatened if she exercises her rights as a federally protected consumer, which has caused her to endure emotional distress, mental and emotional stress.

68. Fact, the plaintiff has been experiencing continuous headaches, feeling anxious, and heart palpitations. Plaintiff's anxiety is at an all-time high and her temper is altered.

69. "Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress…It includes all

highly unpleasant mental reactions such as fright or grief, shame,

humiliation, embarrassment, anger, chagrin, disappointment, worry and

nausea." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939,

957 (9th Cir. 2011).

70. On February 22, 2021, plaintiff had a video doctor visit via My Rush app

with Dr. Lisa Rosman, MD from Rush University. Plaintiff explained her

symptoms to Dr. Rosman who then advised plaintiff of helpful apps for

anxiety, referral for ambulatory social worker, and therapy (see exhibits

X3-D4).

71. On March 1, 2021, plaintiff spoke on the phone with ambulatory social

worker Natalie Burdett, LCSW from Rush University. Ms. Burdett explained

therapy to the plaintiff, provided mental health resources, and a

grounding technique to help with panic attacks (see exhibits E4-H4).

72. On March 11, 2021, ambulatory social worker Natalie Burdett provided a

list of therapists who offer a payment sliding scale to the plaintiff (see

exhibits I4-J4).

V.  Relief

- Plaintiff realleges the allegations set forth in paragraphs 27 through 72.
- Pursuant to 15 USC 1692k(a)(1)(A), plaintiff demands judgement in the amount of $122,025 for each time the defendant, Verizon Wireless violated the FDCPA.

- Pursuant to 15 USC 1692k(a)(3), plaintiff demands judgement in the amount of $3,000 for reasonable attorney fees.

- Pursuant to 15 USC 1681n(a)(1)(A), plaintiff demands judgement in the amount of $53,000 for each time the defendant, Verizon Wireless violated the FCRA.

- Plaintiff demands punitive damages in the amount of $150,000 for defamation of character, ruined reputation, and financial injury caused by defendant, Verizon Wireless.

- Plaintiff demands punitive damages in the amount of $150,000 for emotional distress caused by defendant, Verizon Wireless.

- A settlement agreement between the plaintiff and the defendant, Verizon Wireless that the defendant shall remove any derogatory information from all credit reporting agencies: Transunion, Equifax, Experian.

- The defendant, Verizon Wireless, will be barred now or in the future from selling or transferring of the alleged account to any other lender, collection agency, attorney, or entity and barred now and in the future from re-entering this information into the plaintiff's credit reports.

VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _4-30-2021_

Signature of Plaintiff _Tiffani Walker_

Printed Name of Plaintiff _Tiffani Walker_

9449 S. Kedzie Ave.
#553
Evergreen Park, IL 60805
773-701-9316

16